KARL SCHAFFER, petitioner,

*v.*

MAIKA (also known as Marie) KRESTOVNIKOW, otherwise Mary Schaffer.

[Submitted March 9th, 1918. Decided March 22d, 1918.]

1. Copies of parish records of births, marriages and deaths, kept in pursuance of the law of a foreign country, and admissible in evidence in that country, are admissible here when duly certified by the legal custodian and duly authenticated under the hand and seal of the accredited representative of the United States to that country.

2. Such copies will not be received in evidence unless precisely certified and authenticated according to the rules of the common law and the usages of nations.

3. Copies of church records of baptism, not kept in pursuance of law, of a foreign country, are not admissible in evidence upon the certificate of the custodian and authentication by the United States representative, but may be admitted in evidence upon establishing the authenticity of the record by competent testimony and by proving the copies to be true.

---

On motion to receive a record in evidence.

*Mr. Abe J. David* and *Mr. James C. Connolly,* for the petitioner.

*Mr. Benjamin M. Weinberg,* for the defendant.

BACKES, V. C.

After deciding this case (*ante p. 192*) it was reopened to enable the complainant to introduce records, not available at the time of the hearing, tending to show that the defendant had been baptized in the Greek Orthodox church previous to her alleged first marriage. The paper now offered is entitled "Extract from the Metrical Record, Part 1, of Births for the year 1889, Issued by the Parish of the Church of the Holy Conception of Our Lady, Village Vodytchek, Proskurov District, Podolia Province," and its contents certified to in the following manner:

"The foregoing Metrical Record is a correct copy of the original records in the Parish of the Church of the Holy Conception, Village Vodytchek, Proskurov District, Podolia Province;

"IN WITNESS WHEREOF, we have attached hereto our hands and the Church Seal.

> "Parish Priest of Village Vodytchek.
> "(Sgd.)   ALEXANDER YAROSHEVITCH.
> "Deacon   (Sgd.)   ALEXANDER LEONTOV."

The United States consul at Odessa, Russia, attested by his consular seal that—

"Alexander Yaroshevich, Vicar of the Church of the Virgin in the village of Vodichki, District of Proskurof, Government of Podolia, Russia, is an official authorized to keep records of baptisms performed in his church and that his hand and seal affixed to the foregoing instrument is worthy of all due faith and credit."

Parish records of births, marriages and deaths are kept in pursuance of law in Russia, and copies thereof, when duly certified by the parish priest, who is a *quasi*-public official, are received in evidence by the courts of that country. Copies of such records, so attested, are admitted in evidence by our courts when duly authenticated under the hand and seal of the accredited representative of the United States government to that country. *Barber* v. *International Company of Mexico,* 73 *Conn.* 587. The fundamental infirmity in the document before me is that it does not appear that the priest and deacon who certified to its correctness

are the legal custodians of the original record or that they bear any relation to the church of the "Holy Conception of Our Lady," whose records they presume to certify. The authentication of the American consul is, it will be observed, that the certifying priest is the vicar of the "Church of the Virgin," in the village of Vodytchek, and "is an official authorized to keep records of baptisms performed in *his* church." This would indicate that there are two parishes in the village. What jurisdiction, if any, the vicar of one had over the other and its records, is not apparent, and upon this we are not allowed to speculate, nor as to whether the discrepancy is due to a confusion of names. "The object of any such authentication (by the consulates) is to afford satisfactory evidence that the document offered is in fact certified by the official custodian of the original of which it purports to be a copy, having due authority to make such certification. Any evidence is sufficient for this purpose which is calculated to give reasonable assurance of the facts in question. Of this nature, is whatever legitimately tends to prove that the document was obtained from the office where the original is kept; that the signature of the certificate was made by the individual whose name is thus subscribed; that he held, at the time, the official position indicated by his subscription; and that it is one of the functions of those holding that position to certify to such copies." *Barber* v. *International Company of Mexico, supra*. The authentication falls short of these essentials. As such method of proof permits of no inquiry into the genuineness of the record certified, in the making of which the parties sought to be bound had no hand, litigants must be held to a rigid compliance. Copies of non-judicial records of our own public institutions, although attested by the legal custodian under his official seal, are not receivable in evidence unless commanded by statute (*Traction Company* v. *Board of Works, 57 N. J. Law 313*), and a *fortiori* copies of foreign records ought not to be accepted unless by an exact and compelling vouching according to the rules of the common law and the usages of nations, upon which their admissibility exclusively depends.

It was testified by a Russian lawyer, attached to the Russian consulate in New York, that the seal of the church affixed by the priest to his certification, raised a presumption in Russia that he was the legal custodian of the record. This does not meet the point. The presumption has no extraterritorial influence. The competency of the record, all subsidiary formalities having been complied with, depends upon the authentication·by the consul, the sufficiency of which is to be adjudged by the tribunal in which it is offered as evidence.

There is another reason for rejecting the document. The statutes of Russia make it the duty of the parish priest to record all births, marriages and deaths. There is no provision requiring him to record baptisms, although records of births are to be entered immediately after the performance of the baptismal ceremony, and moreover there is no provision for the keeping of a record of the baptism of adults who change their religion to that of the Christian faith. In practice, the entries of births and baptisms are combined in the church record, and while state and church are inseparable, yet the only duty imposed by statute upon the department of church is to record births; the baptismal entries, in connection therewith, constituting the record of ecclesiastical procedure, not required by law to be kept, so far, at least, as has been shown by the evidence. Considered in this twofold aspect, the record is provable in evidence in this jurisdiction for the purpose of establishing the birth of an individual by a duly authenticated copy, but for the purpose of proving baptism it is not admissible unless its authenticity is established by competent testimony, as in *Supreme Assembly* v. *McDonald, 59 N. J. Law 248; Hancock* v. *Catholic Benevolent Legion, 67 N. J. Law 614; Lewis* v. *Marshall et al., 5 Pet. 470; Blackburn* v. *Crawfords, 70 U. S. 175; Huntly* v. *Compstock, 2 Root 99; Weaver* v. *Leiman, 52 Md. 708; Kennedy* v. *Doyle, 92 Mass. 161; Succession of Hebert, 33 La. Ann. 1099; Succession of Justus, 48 La. Ann. 1096.*

Now, when we look into the document, we find further reason for not receiving it in evidence. For a clearer understanding, the pertinent parts are reproduced:

88 N. J. Eq.                 Schaffer v. Krestovnikow.

"EXTRACT FROM THE METRICAL RECORDS, PART 1,          (Sheet extended
        OF BIRTHS FOR THE YEAR 1889.                      below)

| Number of Births | | Month and Date | | Name of Infant | Vocation, first name patronymic and surname of parents and what religion. |
| Male Sex | Female Sex | Birth | Baptism | | |
| NOVEMBER 31 | | | 2 | Maria | Maika Aizikova Rosenblitt, a former Jewess, who at Holy Baptism received the name of MARIA and VASILIEVA, after her Godparent; a resident of Village Tcherno-Ostrov; Greek Orthodox. |

Parish Priest: Simon Krassovski.
Deacon: Vasili Zavalnitzki.

\* \* \*

(Extension of Sheet)

| Vocation, first name and patronymic and surname of Godparents. | Who performed the Ceremony | Attendance of Witnesses by request. |
| VASILI MICHAILOV ZAPEVALO, Senior Police Official of the Third Orenburg Cossack Regiment, and MARIA IVANOVA, wife of MARIAN RUTZINSKI." | Priest: SIMON KRASSOVSKI and Deacon ZAVALNITZKI. | |

\* \* \*

As a record of births for the year 1889, it is not, of course, descriptive of the defendant, for it is an admitted fact that at that time she was eighteen years of age. And, as a baptismal entry, obviously, it is imperfect. We may gather from it that on November 2d of that year, an infant, of the name of Maria, was baptized, and that her godparents and the officiating clergymen were as stated, and that there were no witnesses present. But, who this Maria was is, as a matter of record, undisclosed.

The officially prescribed method of identification, by a statement of the "vocation, first name patronymic and surname of parents and what religion," was entirely ignored, unless it be that the words "Greek Orthodox" described the religious faith of the parents, which surely was not the case in this instance. The substituted and gratuitous identification of "Maika Aizikova Rosenblitt, a former Jewess, who at Holy Baptism received the name of Maria and Vasilieva, after her godparent, a resident of Village Tcherno-Ostrov," must be disregarded as purely hearsay. Competent records are evidential only of that which is lawfully entered.

A decree may be entered as heretofore advised.